UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FRANK C. RODRIGUEZ,

                Petitioner,

v.                                  CASE NO. 03-CV-74919-DT
                                  HONORABLE GERALD E. ROSEN

KURT JONES,

                Respondent.
_____/

### OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Frank C. Rodriguez has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. Respondent Kurt Jones urges the Court through counsel to deny the habeas petition on grounds that the state court did not unreasonably apply Supreme Court precedent to Petitioner's claims and that some of the claims are procedurally defaulted. Having reviewed the pleadings and record, the Court agrees that Petitioner's claims do not warrant granting the writ of habeas corpus. Accordingly, the habeas petition will be denied.

## I. Procedural History

### A. The Trial, Sentence, and Direct Appeal

Petitioner was tried jointly in Oakland County Circuit Court with co-defendant Tico Porter. On November 4, 1997, the jury found Petitioner guilty of conspiracy to deliver 650 or more grams of cocaine, MICH. COMP. LAWS § 750.157a; MICH. COMP. LAWS § 333.7401(2)(a)(i), possession with intent to deliver 50 to 224 grams of cocaine, MICH. COMP. LAWS § 333.7401(2)(a)(iii), and two counts of delivery of less than 50 grams of cocaine, MICH. COMP.

Laws § 333.7401(2)(a)(iv).[1]  The facts leading to these convictions have been summarized by

the Michigan Court of Appeals as follows:

> Defendants' convictions arise from their alleged involvement in sales of cocaine
> in Waterford Township and Pontiac from approximately September 1990 to
> March 1994.  In 1988, the Waterford Police Department received information that
> Rodriguez was selling cocaine in area bars.  In 1989 and 1990, the police
> conducted surveillance of Rodriguez' activities.  On September 28, 1990, the
> police arrested Rodriguez for driving while his operator's license was suspended
> and, in a search incident to the arrest, found cocaine; Rodriguez was charged with
> possession with intent to deliver less than fifty grams of cocaine.  In December
> 1992, Rodriguez pleaded guilty to that charge and was sentenced to lifetime
> probation.
>
> In the interim, in April 1992, the Waterford Police, in conjunction with the
> Oakland County Sheriff's Department and the Narcotics Enforcement Team,
> began a larger investigation into defendants' drug dealing on the basis of
> information that the size and scope of their organization had grown.  The police
> resumed surveillance, during which they observed Porter present with Rodriguez
> while Rodriguez was dealing cocaine.  In July 1993, a grand jury convened and,
> in March 1994, returned an indictment charging defendants.  Also named in the
> indictment was a coconspirator, Paul Potter, who pleaded guilty to a lesser charge
> in exchange for his testimony against defendants.
>
> The indictment alleged that both defendants, Potter, "and others both known and
> unknown to the Grand Jury" participated in a conspiracy beginning about
> September 1990 and continuing until March 1994, in which Rodriguez purchased
> cocaine in quantities ranging from one ounce to one kilogram and that Porter and
> Potter aided Rodriguez in the transporting, storing, weighing, and packaging of
> the cocaine that was sold in smaller amounts in Oakland County during this
> period.  The indictment also charged defendants and Potter each with possession
> with intent to deliver more than 650 grams of a mixture containing cocaine in
> November 1991 and charged Rodriguez with two counts of delivering less than
> fifty grams of a mixture containing cocaine that involved transactions on August
> 13, 1991, and September 10, 1991, and one count of possession with intent to
> deliver less than fifty grams of a mixture containing cocaine that involved a
> transaction on December 17, 1991.  Following a preliminary examination,

---

[1]  Petitioner was acquitted of a fifth count, which charged him with possession with intent
to deliver less than fifty grams of cocaine.  Tico Porter was convicted of conspiracy to possess
with intent to deliver 225 to 649 grams of cocaine, Mich. Comp. Laws §§ 750.157a and
333.7401(2)(a)(ii).

2

defendants were bound over on all charges.

After defendants were bound over for trial, the second count charging Porter with possession with intent to deliver more than 650 grams of a mixture containing cocaine was amended to possession with intent to deliver 50 or more but less than 225 grams of a mixture containing cocaine. The second count of the indictment charging Rodriguez with possession with intent to deliver more than 650 grams of a mixture containing cocaine was amended to possession with intent to deliver 50 or more but less than 225 grams of a mixture containing cocaine. Following a jury trial, defendants were convicted as set forth above.

*People v. Rodriguez*, 251 Mich. App. 10, 13-16;650 N.W.2d 96, 101-02 (2002). The trial court sentenced Petitioner to life imprisonment without the possibility of parole for the conspiracy conviction, ten to thirty years in prison for the possession conviction, and two to thirty years in prison for each of the delivery convictions.

In an appeal of right, Petitioner alleged that (1) his rights under the Double Jeopardy Clause were violated, (2) the trial court's jury instructions were fatally defective, (3) he was denied his right to a unanimous verdict, (4) he was deprived of his right to present a defense by the trial court's ruling and the prosecutor's misconduct, (5) the admission of his nontestifying co-defendant's out-of-court statement violated his rights under the Confrontation Clause, and trial counsel was ineffective for not objecting, and (6) the prosecutor's other misconduct required reversal. The Michigan Court of Appeals was unpersuaded by these arguments and affirmed Petitioner's convictions in a published opinion on April 26, 2002. *See id*.

Petitioner raised the same six claims and six new claims in the Michigan Supreme Court. The new claims alleged that (7)[2] the trial court deprived Petitioner of his right to due process by admitting "other acts" evidence, (8) the trial court violated Petitioner's right not to be placed

---

[2] The Court has numbered the new claims to follow the other claims in consecutive order.

twice in jeopardy by failing to instruct the jury on similar acts evidence, (9) defense counsel's
failure to request a limiting instruction on similar acts evidence violated Petitioner's right to
effective assistance of counsel, (10) the trial court abused its discretion when denying
Petitioner's motions for a separate trial, (11) the state courts failed to uphold the "same
transaction" test, and (12) the trial court failed to instruct the jury that it must unanimously agree
on the specific acts that equaled 650 grams.  The Michigan Supreme Court denied leave to
appeal on April 1, 2003, because it was not persuaded that the questions presented should be
reviewed.  *See People v. Rodriguez*, 468 Mich. 880; 659 N.W.2d 241 (2003) (table).

**B.  The Habeas Petition**

Petitioner filed his habeas corpus petition on December 8, 2003.  The petition
incorporated by reference the twelve issues that Petitioner presented to the Michigan Supreme
Court.  Respondent moved to dismiss the habeas petition on the ground that Petitioner had not
exhausted state remedies for all his claims.  On January 4, 2005, the Court stayed Petitioner's
exhausted claims and dismissed his unexhausted claims so that Petitioner could pursue additional
remedies in state court.  The Court closed this case for statistical purposes.

**C.  State Collateral Review and the Reinstated Habeas Petition**

Petitioner then returned to state court where he filed a motion for relief from judgment.
The trial court denied his motion, and the Michigan Court of Appeals denied leave to appeal for
failure to show entitlement to relief under Michigan Court Rule 6.508(D).  *See People v.
Rodriguez*, No. 265073 (Mich. Ct. App. Apr. 11, 2006).

In an application for leave to appeal in the Michigan Supreme Court, Petitioner argued

4

that (13)[3] amendments to state law rendered his sentence cruel or unusual punishment under the
Michigan Constitution, (14) the police and prosecutor engaged in sentencing entrapment,(15) his
pre-sentence information report contained incorrect information, (16) he was entitled to
consideration for parole due to his cooperation with law enforcement officers, (17) he was
improperly sentenced as a habitual offender, (18) he was denied effective assistance of trial and
appellate counsel, and (19) the trial court erred in its order denying Petitioner's motion for relief
from judgment and in failing to rule on certain issues.  The Michigan Supreme Court, in lieu of
granting leave to appeal, remanded the case to the trial court to determine whether changes had
been made in Petitioner's presentence investigation report, as ordered by the trial court at
Petitioner's sentencing hearing, and, if not, for amendment of the report.  The supreme court
denied leave to appeal in all other respects because Petitioner failed to establish entitlement to
relief under Michigan Court Rule 6.508(D).  *See People v. Rodriguez*, 477 Mich. 902; 722
N.W.2d 853 (2006).

On November 29, 2006, Petitioner moved to reinstate his federal habeas petition, and on
April 6, 2007, the Court re-opened this case.  The parties then filed supplemental briefs.

The Court construes the habeas petition to assert the nineteen claims that Petitioner raised
in state court.  Respondent contends that some of these claims are procedurally defaulted.  While
that may be true, the Court will excuse the alleged procedural defaults in the interests of
efficiency.  Petitioner's claims lack merit, and the Court has found it more efficient to adjudicate
the claims on their merits than to analyze whether they are barred from review by the doctrine of

---

[3] Once again, the Court has numbered Petitioner's claims consecutively to follow his
other claims.

5

procedural default.

## II.  Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of

his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's

majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly

established federal law "if the state court identifies the correct governing legal principle from

[the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case." *Id*. at 413.  When no state court addresses a properly raised federal claim, a

federal court is no longer bound by § 2254's deferential standard of review and instead reviews

the claim *de novo*.  *Williams v. Haviland*, 467 F.3d 527, 530 (6th Cir. 2006) (citing *Maples v.

Stegall,* 340 F.3d 433, 436-37 (6th Cir. 2003)).

## III.  Discussion

### A.  Denial of Motion for Separate Trials

Petitioner alleges that the trial court should have granted his motion for five separate jury

6

trials on the five charges against him.  Petitioner has not supported this argument with any

Supreme Court case directly on point.  His argument is based on state law and on *Lisenba v.*

*California*, 314 U.S. 219 (1941), in which the Supreme Court stated that

> [t]he aim of the requirement of due process is not to exclude presumptively false
> evidence, but to prevent fundamental unfairness in the use of evidence whether
> true or false . . . .
>
> As applied to a criminal trial, denial of due process is the failure to observe that
> fundamental fairness essential to the very concept of justice.  In order to declare a
> denial of it we must find that the absence of that fairness fatally infected the trial;
> the acts complained of must be of such quality as necessarily prevents a fair trial.

*Id*. at 236.

The Court has found no Supreme Court cases holding that a defendant in a criminal case

has a constitutional right to a separate trial on each of the charges against him.  The Eighth

Circuit Court of Appeals has said that, "[t]o obtain federal habeas corpus relief, the joinder [of

offenses in a single trial] 'must actually render petitioner's state trial fundamentally unfair and

hence, violative of due process.'" *Robinson v. Wyrick*, 735 F.2d 1091, 1094 (8th Cir. 1984)

(quoting *Tribbitt v. Wainwright*, 540 F.2d 840 (5th Cir. 1976)).

It was not fundamentally unfair to join the charges against Petitioner in one trial because

all the charges were drug related and joinder was an efficient use of resources.  There were many

prosecution witnesses who testified generally about Petitioner's lifestyle and activities and also

about Petitioner's drug transactions.  The defense witnesses, moreover, provided testimony that

was not specific to any one particular charge.  Furthermore, it is obvious from the jury's acquittal

on Count V that the jury was able to distinguish the facts and charges.

Petitioner maintains that the joinder of charges was prejudicial because he wanted to

testify on the four lesser charges against him, but not on the conspiracy charge.  "Prejudice

7

sufficient to require separate trials on that basis, however, may be established only by 'a persuasive and detailed showing regarding the testimony [that the defendant] would give on the one count he wishes severed and the reason he cannot testify on the other counts.'" *Closs v. Leapley*, 18 F.3d 574, 578 (8th Cir. 1994) (quoting *United States v. Possick,* 849 F.2d 332, 338 (8th Cir. 1988)).  Petitioner has not alleged what he would have said if he testified on some, but not all, the charges.  Therefore, even assuming that there is a federal constitutional right to separate trials on each charge, the trial court did not deprive Petitioner of due process or a fundamentally fair trial by not severing the charges.

### B.  Double Jeopardy

In December of 1992, Petitioner pleaded guilty to possession with intent to deliver less than 50 grams of cocaine.  The conviction stemmed from Petitioner's possession of cocaine and arrest on September 28, 1990.  Subsequent to Petitioner's guilty plea, a grand jury indicted him for the charges under attack in this case.  Petitioner alleges that the trial court should have dismissed the conspiracy charge on double jeopardy grounds because he had already been convicted of a crime that was part of the same transaction as the conspiracy.  According to Petitioner, the 1990 charge for possessing cocaine and the subsequent conspiracy charge stemmed from the same transaction, and because the prosecution knew about the conspiracy when they charged him with possessing cocaine in 1990, the prosecution was barred from charging him with conspiracy in 1994.  The Michigan Court of Appeals determined that Petitioner's conspiracy conviction and earlier drug conviction were based on independent transactions and that the conspiracy conviction did not offend the constitutional protection against double jeopardy.

8

The Double Jeopardy Clause of the Fifth Amendment provides that no person may "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Clause protects against multiple punishments for the same offense. *Witte v. United States*, 515 U.S. 389, 396 (1995). "Under *Blockburger* [*v. United States*, 284 U.S. 299, 304 (1932)], penalties imposed under two separate statutes do not constitute double jeopardy if 'each provision requires proof of an additional fact which the other does not.'" *Carter v. Carter*, 59 Fed. Appx. 104, 109 n.3 (6th Cir. 2003) (unpublished). The *Blockburger* test, however, "is a rule of statutory construction which guides federal courts in determining the scope of *federal* statutes." *Banner v. Davis*, 886 F.2d 777, 781 (6th Cir. 1989) (emphasis in original). "It does not necessarily apply to a federal court's construction of a state statute," and it "does not necessarily control the inquiry into the intent of a state legislature." *Id*. at 780.

"When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes" and "a state court's determination of the legislature's intent." *Id*. at 780. "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Id.*

In Michigan,

the controlled substance provisions of the Public Health Code are designed to protect society from the "patently harmful" effects of drug trafficking, *see People v. Gorgon*, 121 Mich. App. 203, 206-207, 328 N.W.2d 619 (1982), [while] the purpose of the conspiracy statute is to protect society from the "increased and special danger to society presented by group as opposed to individual activity." *People v. Carter*, 415 Mich. 558, 569-570, 330 N.W.2d 314 (1982). Thus, distinct social norms are involved. Further, the conspiracy statute, M.C.L. § 750.157a; M.S.A. § 28.354(1), provides for punishment equal to the substantive crime; it does not impose a hierarchical, harsher penalty based upon the presence of aggravating factors. Additionally, in *Carter, supra* at 569, 330 N.W.2d 314,

9

[the Michigan] Supreme Court stated:

> It is a settled principle of black-letter law that conspiracy is a crime that is separate and distinct from the substantive crime that is its object. LaFave & Scott, Criminal Law, § 62, p 494; *People v. Tinskey*, 394 Mich 108; 228 NW2d 782 (1975); *People v. Chambers*, 279 Mich 73; 271 NW 556 (1937). The guilt or innocence of a conspirator does not depend upon the accomplishment of the goals of the conspiracy . . . . Thus, a defendant may be convicted and punished for both the conspiracy and the substantive crime. *Pinkerton v. United States*, 328 US 640; 66 S Ct 1180; 90 L Ed 1489 (1946).

*People v. Sammons*, 191 Mich. App. 351, 374-375; 478 N.W.2d 901, 913 (1991). The Michigan Court of Appeals concluded in *Sammons* that "separate convictions and punishment for possession with intent to deliver cocaine and conspiracy to deliver cocaine do not violate double jeopardy protections." *Id*., 191 Mich. App. at 375; 478 N.W.2d at 913.

It is clear from *Sammons* that the Michigan legislature intended cumulative punishments for the crimes in question here. Therefore, Petitioner's conviction for conspiracy to possess with intent to deliver 650 or more grams of cocaine does not violate the Double Jeopardy Clause.

### C. The Right to Present a Defense

Petitioner alleges that he was denied his constitutional rights to due process, compulsory process, and to present a defense by the trial court's erroneous rulings and the prosecutor's misconduct. This claim concerns Bob Proden, a potential defense witness whom the trial court excused after Proden invoked his constitutional right not to incriminate himself. Petitioner claims that the trial court should have (1) required Proden to answer questions that did not threaten to incriminate him or (2) compelled the prosecutor to grant Proden immunity from prosecution for any testimony about his use of cocaine. Petitioner further alleges that the prosecutor engaged in misconduct by threatening to prosecute Proden if he admitted to

10

committing crimes when he testified.

The Michigan Court of Appeals stated on review of this claim that, although the trial court's dismissal of Proden after he invoked his right to remain silent may have been improper under state law, Petitioner failed to show that the error affected the outcome of the trial.  The state court of appeals also determined that the prosecutor did not preclude Proden from testifying and that the trial court did not err in failing to compel the prosecutor to grant immunity to Proden.

The Compulsory Process Clause of the Sixth Amendment generally entitles criminal defendants to present competent and reliable exculpatory evidence.  *DiBenedetto v. Hall*, 272 F.3d 1, 7-8 (1st Cir. 2002) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).  "Few rights are more fundamental than that of an accused to present witnesses in his own defense, *see, e.g.,Chambers v. Mississippi,* 410 U.S. 284, 302 (1973).  Indeed, this right is an essential attribute of the adversary system itself." *Taylor v. Illinois,* 484 U.S. 400, 408 (1988).  An accused person, however, "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id.* at 410. Furthermore, the right to present a defense is subject to harmless error analysis. *See Fleming v. Metrish*, 556 F.3d 520, 536 (6th Cir. 2009), *petition for cert. filed*, (U.S. May 20, 2009) (No. 08-10545.  To determine whether an error is harmless, a federal habeas court must "ask whether the error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* (quoting *Hereford v. Warren,* 536 F.3d 523, 528 (6th Cir. 2008) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993)).

Petitioner contends that the claimed errors were not harmless because Proden would have

11

rebutted Craig Hollingsworth's claim that he saw Petitioner sell a large bag of cocaine to Proden. Even if Proden could have contradicted Hollingsworth's testimony, Petitioner's own statement to the police indicated that he sold over 650 grams of cocaine during the course of the conspiracy, and several witnesses other than Hollingsworth indicated that Petitioner was dealing in more than 650 grams of cocaine per year.  Thus, even assuming that Petitioner was deprived of his constitutional rights to compulsory process and to present a defense, the constitutional errors could not have had a substantial and injurious effect or influence on the jury's verdict and were harmless.

### D.  The Confrontation Clause; Trial Counsel

Petitioner alleges that his right to confront the witnesses against him was violated by Mary Chopski's testimony that co-defendant Tico Porter had said Petitioner was the biggest drug dealer in Oakland County.  (Tr. Oct. 20, 1997, at 120-21 & 141.)  Petitioner further alleges that his trial attorney was ineffective for failing to object to the comment.  The Michigan Court of Appeals determined that Chopski's comment was properly admitted against both defendants and that Petitioner was not prejudiced by the alleged error.  The court of appeals also stated that defense counsel's failure to object to the statement did not deprive Petitioner of effective assistance of counsel.

Ms. Chopski's testimony about what Tico Porter said about Petitioner was undeniably

inadmissible hearsay[4] and a *Bruton*[5] violation.  However, the Court finds the error could not have

had  a substantial and injurious effect or influence on the jury's verdict.  *Brecht*, 507 U.S. at 637.

 A close friend of Petitioner's (Dale Wolsy) testified that Petitioner had admitted to being the

biggest drug dealer in the area (Tr. Oct. 20, 1997, at 171), and Curtis Menzies conceded at trial

that Petitioner might have said he was the biggest dope dealer around.  (Tr. Oct. 10, 1997, at

271.)  Thus, even though Mary Chopski's hearsay testimony that co-defendant Porter had said

that Petitioner was the biggest cocaine dealer in the county might amount to constitutional error,

the error was harmless, and defense counsel's failure to object to Chopski's testimony did not

amount to ineffective assistance.

### E.  Prosecutorial Misconduct

Petitioner alleges that the prosecutor committed misconduct by shifting the burden of

proof, making herself an unsworn witness, vouching for the credibility of a key witness, and

denigrating defense counsel.  The Michigan Court of Appeals found no merit in these claims.

To prevail on a claim of prosecutorial misconduct, it is not enough to show that the

prosecutor's remarks were undesirable or even universally condemned.  *Darden v. Wainwright*,

477 U.S. 168, 181 (1986).  The petitioner must demonstrate that the prosecutor's conduct

infringed on a specific constitutional right or infected the trial with such unfairness as to make

the resulting conviction a denial of due process.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643

---

[4]  Although Porter was a co-defendant/co-conspirator, the co-conspirator non-hearsay rule, Fed. R. Evid. 801(d)(2)(E), is not applicable here as Porter's statement that Petitioner was the biggest drug dealer in the county was not made "during the course and in furtherance of the conspiracy."

[5]  *United States v. Bruton*, 391 U.S. 120 (1968).

(1974).  The complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007), and "so egregious . . . as to render the entire trial fundamentally unfair."  *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979).  When determining whether a prosecutor's comments were flagrant, courts must consider "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused."  *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

### 1. The Burden of Proof

Petitioner alleges that the prosecutor's opening statement and closing argument diminished the State's burden of proof and shifted the burden of proof to him.  In her opening statement, the prosecutor asked the jurors to confirm the grand jury's decision and to find the defendants guilty.  (Tr. Sept. 29, 1997, at 59.)

Prosecutors may not refer to the grand jury's role in a case, "because such statements improperly and unfairly suggest that a jury should return a conviction because a grand jury returned an indictment."  *United States v. Harper*, 466 F.3d 634, 645 (8th Cir. 2006) (citing *United States v. Lewis,* 423 F.2d 457, 460 (8th Cir. 1970), and *Weaver v. United States,* 379 F.2d 799, 802 (8th Cir. 1967)), *cert. denied*, 549 U.S.1273 (2007).  However, such statements do not warrant reversal when any resultant prejudice was rendered harmless by the trial court's curative efforts.  *Id*. at 645-46.

The trial court struck the prosecutor's remark about the grand jury after one of the defense attorneys objected to the remark.  The trial court then informed the jury that the grand

14

jury's decision was not evidence and that the jurors should decide the case on the evidence admitted during trial. The trial court later informed the jurors that opening statements are not evidence. (Tr. Sept. 29, 1997, at 59-60 and 228.) This Court agrees with the Michigan Court of Appeals that the trial court's curative instructions cured the error.

Petitioner also objects to the prosecutor's closing argument where she stated that the defendants were "nowhere near innocent." (Tr. Oct. 28, 1997, at 10.) Prosecutors may not express a personal opinion on the guilt or innocence of a defendant. *Hall v. Vasbinder*, 563 F.3d 222, 235 (6th Cir. 2009). The evidence against Petitioner, however, was overwhelming, and the trial court instructed the jurors that the attorneys' arguments were not evidence, but were meant to help the jurors understand the evidence and the parties' theories. The trial court also instructed the jurors that Petitioner was presumed innocent and that the prosecutor had to prove each element of the crimes beyond a reasonable doubt. (Tr. Oct. 29, 1997, at 6-8.) The Court concludes from the trial court's instructions and from the strength of the evidence against Petitioner that the prosecutor's remark was not flagrant even though it was improper to say that Petitioner was not innocent.

### 2. Unsworn Witness, Vouching

Petitioner claims that the prosecutor made herself an unsworn witness and vouched for the credibility of Paul Potter. The prosecutor reminded Potter of their prior conversations, and she stated in her closing argument that she and Detective Lalone had not fed any answers to Potter when they interviewed him. (Tr. Oct. 8, 1997, at 65-66; Tr. Oct. 28, 1997, at 200.)

> Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness. Generally, improper vouching involves either blunt comments [asserting the prosecutor's own belief in

15

a witness's credibility] or comments that imply that the prosecutor has special
knowledge of facts not in front of the jury or of the credibility and truthfulness of
witnesses and their testimony . . . .

*United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (citations omitted) (alterations

added).

The prosecutor's disputed remark about her prior conversation with Paul Potter was an

attempt to refresh Potter's memory.  The prosecutor was not suggesting to the jurors that she

knew something they did not know.  And the remark that the prosecutor and Detective Lalone

had not fed any answers to Potter was not a comment on Potter's credibility or truthfulness.  It

was merely a way of saying that the prosecution had not put words in Potter's mouth.  Potter,

moreover, was one of many witnesses who gave incriminating testimony against Petitioner.

Therefore, the prosecutor's remarks to and about Potter could not have misled the jury or

prejudiced the defense.

### 3.  Denigrating Defense Counsel

The prosecutor stated in her closing argument that defense counsel's theory was a "cop

out" and that counsel had provided jurors with an easy way to find Petitioner not guilty of the

charged crimes even though they might think he was guilty of something.  The prosecutor stated

during her rebuttal argument that the defense attorneys' arguments were "smoke [and] mirrors."

She also said that, although the defense attorneys had tried to make deals with the prosecutor's

office when they represented low-level drug dealers, they had criticized her for using people that

cooperated with the authorities, because their present clients were "at the top of the [drug

hierarchy] ladder."  (Tr. Oct. 28, 1997, at 10, 186, and 196-97.)  Petitioner alleges that these

comments denigrated defense counsel.

16

Attorneys may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), "or argue that counsel is attempting to mislead the jury," *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008).  They may, however, highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory, *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).  They may even "argue that the jury should arrive at a particular conclusion based on the record evidence, including the conclusion that the evidence prove[d] the defendant's guilt."  *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000)).

The Sixth Circuit Court of Appeals has stated that a prosecutor's comment on a "smoke and mirrors defense" is "within acceptable bounds."  *United States v. Wilson*, 199 Fed. Appx. 495, 498 n.1 (6th Cir. 2006) (unpublished).  However, the "smoke and mirror" remark was not the only comment made by the prosecutor in this case.  The Court believes that the prosecutor's comments about defense counsel's attempts to make deals with the prosecutor's office were not proper.  Nonetheless, the Court finds that improper comments were harmless.

The jury, no doubt, was persuaded to convict Petitioner on the strength of the evidence against him and not on the basis of the prosecutor's opening and closing remarks.  The evidence against Petitioner was overwhelming..  Furthermore, the jury was instructed that opening statements and closing arguments are not evidence.  Under these circumstances, the prosecutor's remarks could not have had a substantial and injurious effect or influence on the jury's verdict and were harmless.

### 4.  Sentencing Entrapment

17

Petitioner contends that the prosecutor and police entrapped him by engaging in conduct that escalated the amount of cocaine and the number of transactions so that the prosecutor could seek the longest possible sentence, as well as, consecutive sentencing.  No state court addressed the merits of this claim.  However, "the Supreme Court has not yet recognized a constitutionally required entrapment defense . . . ."  *Sosa v. Jones*, 389 F.3d 644, 645 (6th Cir. 2004).  Therefore, the state court's rejection of Petitioner's entrapment claim was not contrary to, nor an unreasonable application of, clearly established federal law.  *Id*.

**F.  "Other Acts" Evidence**

Petitioner alleges that the trial court deprived him of his rights to due process and a fair trial by admitting testimony about his arrest on September 28, 1990, for possession with intent to deliver less than fifty grams of cocaine.  Petitioner contends that any probative value of the evidence was outweighed by the danger of unfair prejudice.  This claim has no merit because

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . .  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 519-23 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1704 (2008).  Because there is no Supreme Court decision holding that the admission of "other acts" evidence violates the Constitution, the state courts' rejection of Petitioner's claim cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d).

Petitioner also alleges that (1) the trial court should have instructed the jury that "other acts" evidence cannot be used as substantive evidence and (2) defense counsel was ineffective

18

for failing to request a limiting instruction.  According to Petitioner, the lack of a jury instruction on "other acts" evidence permitted the jury to aggregate the drugs involved in the prior conviction and to consider those drugs as part of the charged conspiracy.

Petitioner's arguments are unpersuasive because the prosecutor explained in her opening statement that Petitioner's arrest in 1990 for possession with intent to deliver less than 50 grams of cocaine was not part of the charged conspiracy.  The prosecutor explained that testimony about the incident would be admitted simply to show that Petitioner had a common scheme.  The prosecutor also stated that the jurors could not use that evidence to aggregate the entire amount of cocaine, nor consider the evidence when determining whether Petitioner possessed or delivered over 650 grams of cocaine.  (Tr. Sept. 29, 1997, at 56.)  The clear implication was that the "other acts" evidence could not be used as substantive evidence.  Defense counsel therefore was not ineffective for failing to request a jury instruction on "other acts" evidence,[6] and the lack of a jury instruction on "other acts" evidence did not deprive Petitioner of a fair trial.

### G.  The Jury Instructions

Petitioner alleges that the trial court's jury instructions were defective and violated his constitutional right to a fair trial.  The instruction in dispute reads:

> Let me talk about numbers.  It's called aggregation.  *The delivery and sale of narcotics on a regular basis, which contributes to the promotion of a continuing conspiracy to deliver are not separate transactions.*

> If you believe the evidence so shows, you may add up the separate amounts to show that there was an agreement to deliver over 650 grams or more of any mixture containing the controlled substance cocaine.

---

[6] Defense counsel did make a continuing objection to any mention of the incident.  (Tr. Oct. 9, 1997, at 46-47; Tr. Oct. 8, 1997, at 5-6.)

19

(Tr. Oct. 29, 1997, at 32) (emphasis added).

Petitioner alleges that it was the jury's duty to determine the facts and that the jury instruction quoted above directed a verdict on the issue of whether a series of small cocaine sales demonstrated an intent to deliver 650 or more grams. Petitioner argues that the trial court compounded the error by refusing to instruct the jury that there can be numerous and separate conspiracies within the indictment period and that a conspiracy is complete upon formation of the agreement.

The Michigan Court of Appeals stated that the trial court did not err when it declined to give the instructions requested by Petitioner and that the court's instruction on aggregation may have been slightly imperfect, but did not require reversal. The court of appeals determined that the instructions as a whole fairly presented the issues and protected Petitioner's rights.

On habeas review, it is not enough to show that the jury instructions were incorrect under state law, *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), and undesirable, erroneous, or even universally condemned, *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Instead, to warrant habeas relief, the instructions, as a whole, must have rendered the entire trial fundamentally unfair. *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000).

The disputed jury instruction and the alleged omissions in this case did not render Petitioner's trial fundamentally unfair, because the trial court informed the jury that it was their responsibility to decide the facts. (Tr. Oct. 29, 1997, at 6.) The trial court defined "conspiracy" and explained the characteristics of a conspiracy. (*Id*. at 25-27.) The instructions implicitly informed the jurors that a conspiracy is complete when two or more people reach an agreement to commit a crime. Moreover, the trial court stated that the prosecution was required to prove

20

that each of the co-conspirators intended to deliver the statutory amount.  (*Id.* at 28.)  The court did not shift the burden of persuasion to Petitioner, nor instruct the jurors to presume that Petitioner intended to deliver over 650 grams of cocaine.  *Cf. Sandstrom v. Montana*, 442 U.S. 510, 523-24 (1979).  Instead, the court stated that the jury could aggregate the amounts and determine that there was an agreement to deliver over 650 grams of cocaine.  Permissive inferences, as opposed to mandatory inferences, are not problematic.  *Coe v. Bell*, 161 F.3d 320, 332 (6th Cir. 1998).

The Court concludes that the trial court's jury instructions did not direct a verdict on the issue of Petitioner's intent and did not deprive Petitioner of a fundamentally fair trial.  Petitioner therefore has no right to relief on the basis of the jury instruction on aggregation.

### H.  The Right to a Unanimous Verdict

Petitioner alleges that he was deprived of his right to a unanimous verdict because the jury's verdict did not disclose unanimous agreement on (1) which co-conspirator agreed with him to deliver more than 650 grams of cocaine and (2) which acts made up the conspiracy.  The Michigan Court of Appeals reviewed this claim for "plain error" and concluded that Petitioner had failed to show plain error affected his substantial rights.

The Supreme Court has said that "a state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict . . . ."  *Schad v. Arizona*, 501 U.S. 624, 635 (1991) (citing *Johnson v. Louisiana,* 406 U.S. 356 (1972), and *Apodaca v. Oregon,* 406 U.S. 404 (1972)).  Even if the Court were to assume that Petitioner's case is a capital case because he was sentenced to the State's most severe punishment (life imprisonment without parole), the Supreme Court has

21

never suggested that in returning general verdicts . . . the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone.  In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.  Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S.Ct. 1227, 1236-1237, 108 L.Ed.2d 369 (1990) (BLACKMUN, J., concurring) (footnotes omitted).

*Schad*, 501 U.S. at 631-632.  Because there is no Supreme Court precedent holding that a jury must agree on the factual issues underlying the verdict, Petitioner has no right to relief on his claim about jury unanimity.

### I.  Trial and Appellate Counsel

Petitioner alleges that his attorneys were ineffective for failing to raise his claims during trial or in the appeal of right.  The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims.  *Williams*, 529 U.S. at 391.  Pursuant to *Strickland*, Petitioner must demonstrate that his attorneys' performances were deficient and that the deficient performances prejudiced the defense.  *Strickland*, 466 U.S. at 687.  This requires showing "that counsel's representation fell below an objective standard of reasonableness," *id*. at 688, and "that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The Court has determined that Petitioner's claims lack merit or that the alleged constitutional errors were harmless.  Therefore, to the extent that Petitioner's attorneys did not

22

address Petitioner's claims during trial on in the appeal of right, the attorneys were not ineffective.  An attorney cannot be ineffective for failing to raise a meritless issue.  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

### J.  Sentence and Parole Issues

Petitioner has asserted a number of claims regarding his sentence and the execution of his sentence.  Specifically, he alleges that his pre-sentence information report contains inaccurate information, he should not have been sentenced as a habitual offender, and the state court should have retroactively applied amendments to Mich. Comp. Laws § 333.7401(2)(a)(i) and Mich. Comp. Laws § 791.234.  He also alleges that he is entitled to consideration for parole due to his cooperation with law enforcement officers.

These claims raise state law issues, and "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire,* 502 U.S. 62, 68 (1991).  Therefore, Petitioner's sentencing and parole claims do not entitle him to relief.

## IV.  Conclusion

The state courts' adjudication and rejection of Petitioner's claims did not result in unreasonable determinations of the facts or in decisions that were contrary to, or unreasonable applications of, clearly established federal law, as determined by the Supreme Court.  Accordingly, the habeas corpus petition [Dkt. 1, Dec. 8, 2003], as amended, is **DENIED**.

A certificate of appealability nevertheless may issue on Petitioner's claims that the Double Jeopardy Clause was violated, that the jury instruction on aggregation was defective, and

that the prosecutor's remarks during her opening statement and closing arguments require

reversal.  Reasonable jurists could debate the Court's resolution of those claims, and the claims

warrant encouragement to proceed further.  *Banks v. Dretke*, 540 U.S. 668, 674 (2004).  The

Court declines to grant a certificate of appealability on Petitioner's remaining claims.  Petitioner

may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith.


s/Gerald E. Rosen

Chief Judge, United States District Court

Dated:  June 9, 2009


**CERTIFICATE OF SERVICE**

I hereby certify that on ____June 9, 2009_____, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: _____Brad H. Beaver_____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:

 Frank Rodriguez, #261206, Carson City Correctional Facility, 10522 Boyer Road, Carson City, Michigan 48811 _____.

s/Ruth A. Brissaud

Ruth A. Brissaud, Case Manager

(313) 234-5137